

**FILED**

JUN 1 8 2007

At_____M
STEPHEN R. LUDWIG, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

|  |  |  |
|---|---|---|
| DINA KARGER, DENISE VOLLMER, DOLLY PRUE-CERDA and MYRNA LAW, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) ) ) | Case No.   **4:07CV33 AS** |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) ) |  |
| MENU FOODS INCOME FUND MENU FOODS INC., MENU FOODS LIMITED, MENU FOODS MIDWEST CORP., MENU FOODS SOUTH DAKOTA, INC., MENU FOODS HOLDINGS, INC., Defendants | ) ) ) ) ) ) ) |  |

### COMPLAINT FOR DAMAGES

Plaintiffs Dina Karger, Denise Vollmer, Dolly Prue-Cerda, and Myrna Law (hereafter "Plaintiffs"), by their undersigned counsel, individually and on behalf of all others similarly situated, hereby set forth in this Class Action Complaint claims for equitable, injunctive, and declaratory relief, and compensatory and punitive damages. These claims raise numerous questions of fact and law that are common to all members of the Class.

This class action is brought by and on behalf of all Consumers (referred to herein collectively as "Class Members", "Consumers" or "Consumer Class") who purchased or paid for pet food researched, manufactured, marketed, promoted, advertised, sold, distributed, and/or placed into the stream of commerce by Defendants Menu Foods Income Fund, Menu Foods, Inc.,

Dockets.Justia.com

Menu Foods Limited, Menu Foods Midwest Corp., Menu Foods South Dakota, Inc. and Menu Foods Holdings, Inc. (hereinafter referred to as "Defendants" or "Menu Foods").

## INTRODUCTION

1.    Defendants manufactured, researched, marketed, promoted, advertised, sold, or distributed, and/or placed into the stream of commerce various brands and types of pet food, for both dogs and cats, manufactured by Menu Foods, Inc, which was later recalled ("pet food"). The pet food was marketed and advertised throughout the nation and in the state of Indiana as being safe and healthy for pets to consume. Moreover, the pet food was sold in pet stores throughout the nation and the State of Indiana.

2.    Plaintiffs and members of the class purchased the pet food.

3.    Plaintiffs and members of the class also fed the pet food to their pets, which later became sick and, in some cases, died.

4.    Plaintiff Karger fed her cat pet food produced by Defendants. This pet food caused Plaintiff Karger's cat to become sick and eventually die from renal failure.

5.    Plaintiff Vollmer fed her cat pet food produced by Defendants. This pet food caused Plaintiff Vollmer's cat to become sick and eventually the cat had to be put to sleep due to kidney failure.

6.    Plaintiff Prue-Cerda  fed her dog pet food produced by the Defendants. This pet food caused Plaintiff Prue-Cerda's dog's death.

7.    Plaintiff Law fed her cat pet food produced by Defendants. This pet food caused Plaintiff Law's cat to become sick.

8.    On or about March 16, 2007 Menu Foods issued a recall of the pet food. The pet food involved was mostly of a type referred to as "cuts and gravy," though other types of pet

food were recalled as well.  The original recall was limited to pet food manufactured between December 3, 2006 and March 6, 2007.

9.      Pet Food included in the recall includes products were marketed, promoted, advertised, and sold by defendants under the brand names: Americas Choice Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulas Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Foodtown, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, Presidents Choice, Price Chopper, Priority US,  Save-A-Lot Special Brand, Schnucks, Science Diet Feline Savory Cuts Cans, Sophistacat, Special Kitty, Springfield Prize, Sprout, Stop & Shop Companion, Tops Companion, Wegmans, Weis Total Pet, Western Family US, White Rose, Winn Dixie, Big Bet, Big Red, Bloom, Cadillac, Mighty Dog Pouch, Mixables, Nutro, Ol'Roy, Pet Essentials, Save-A-Lot Choice Morsels, Shep Dog, Wegmans Bruiser, and Your Pet.

10.      Menu Foods, Inc. later requested that retailers remove all cans of the recalled brands from their shelves.

11.      Defendants knew, or should have known that the pet food was defective and presented a serious risk to the health and safety of animals.

12.      If the Plaintiffs and members of the class had known the true nature of the pet food they would not have purchased it nor allowed their animals to consume the product.

13.      One test conducted by the FDA confirmed the presence of a plastic chemical known as melamine in the pet food.  Another test at the New York State Food Laboratory identified the presence of the rat poison aminopterin in the pet food.

14.      Both melamine and aminopterin are harmful to pets when ingested.

15.    Published reports indicate that of the 40 to 50 animals in Defendants' own tests that were fed contaminated food, 7 died. This would seem to indicate the food has a 15 to 17 percent mortality rate.

16.    It is believed that the contamination was caused by products purchased by Defendants and imported from China, including wheat flour.

17.    The Defendants failed to adequately screen and test the products imported from China, ignoring the threat of contamination that these products presented.

18.    As a result of the ingestion of the pet food Plaintiffs and members of the class's pets were sick, and some died. Plaintiffs and members of the class also had to throw away the unused portion of the pet food they had purchased.

## JURISDICTION AND VENUE

19.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is between citizens of different states, a class action has been pled, and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

20.    Venue is proper in this District under 28 U.S.C. § § 1391(a), (b), and (c), 28 U.S.C. § 1407 and 15 U.S.C. 22. Defendants do substantial business in the State of Indiana and within this Federal Judicial District, advertise in this District, receives substantial compensation and profits from the sales of pet food in this District, and made material omissions and misrepresentations and breaches of warranties in this District so as to subject it to *in personam* jurisdiction in this District.

## PARTIES

21.    Plaintiff Dina Karger is a resident of Tippecanoe County, Indiana. Plaintiff Karger's cat Regis was adopted from the humane society for $55. Plaintiff Karger fed Regis dry

cat food from Iams and Eukanuba, until she decided to buy wet gourmet "cuts and gravy" style cat food in a pouch. Plaintiff Karger purchased six packages Special Select Kitty Gourmet pet food from Walmart. This pet food was manufactured by Defendants. Regis ate three packages of the cat food over two days and showed signs of sickness. On March 19, 2007 Regis was seen by Brenton Arihood, D.V.M. Within two days Regis went into total renal failure and died.

22.    Plaintiff Denise Vollmer is a resident of Fountain County, Indiana. Plaintiff Vollmer purchased Special Kitty "cuts and gravy" pet food from Walmart for her cats. This pet food was manufactured and produced by Defendants. She purchased the pet food on March 12, 2007, and fed the food to her cats until March 19, 2007, when she learned of the recall and returned the remaining pouches. On March 29, 2007, after returning from a business trip, Plaintiff Vollmer found that one of her cats, Mr. Boogety, was not eating and had lost weight. Plaintiff Vollmer brought Mr. Boogety to her veterinarian, Laura Bradley, D.V.M. Dr. Bradley confirmed that Mr. Boogety had kidney failure. Mr. Boogety had to be put to sleep that day.

23.    Plaintiff Dolly Prue-Cerda is a resident of Lake County, Indiana. Plaintiff Prue-Cerda purchased Ol'Roy pet food from Walmart. This pet food was canned and had a gravy texture. This pet food was manufactured and produced by Defendants. Plaintiff Prue-Cerda fed this pet food to her Siberian Husky, Blue. Blue was in excellent health until he drastically declined upon consumption of the contaminated food.   As a result of eating the Defendants' contaminated food, Blue died.

24.    Plaintiff Myrna Law is a resident of St. Joseph County, Indiana. Plaintiff Law purchased Miejer's Main Choice Beef & Gravy canned food for her cat Casey. This pet food was manufactured and produced by the Defendants. Casey shortly thereafter began vomiting and

had diarrhea. Plaintiff Law took Casey to her veterinarian, Joan Ressor, D.V.M., for treatment. Plaintiff Law has incurred more than $1,609 in medical bills so far to treat Casey.

25.    Defendant Menu Foods Income Fund is an unincorporated open-ended trust established under the laws of the Province of Ontario with its principal place of business in Ontario, Canada. The Income Fund controls, either directly or indirectly, the other Defendants engaged in the manufacture and distribution of the tainted pet food at question in this lawsuit.

26.    Defendant Menu Foods, Inc. is a New Jersey Corporation affiliated with the other Defendants and involved in their activities related to the tainted pet food.

27.    Defendant Menu Foods Limited is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON, L5 1B1, and manufactures and sells wet pet food products to retail customers and brand owners throughout the United States and all of North America. Menu Foods Limited is the owner of the New Jersey and Kansas manufacturing plants that produced the tainted pet food. Menu Foods Limited is affiliated with the other Defendants and involved in their activities related to the tainted pet food.

28.    Defendant Menu Foods Midwest Corp is a Delaware corporation affiliated with the other Defendants and involved in their activities related to the tainted pet food.

29.    Defendant Menu Foods South Dakota, Inc., is a Delaware corporation affiliated with the other Defendants and involved in their activities related to the tainted pet food.

30.    Defendant Menu Foods Holdings, Inc. is a Delaware corporation affiliated with the other Defendants and involved in their activities related to the tainted pet food.

## CLASS ACTION ALLEGATIONS

31.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek

certification of a national Consumer Class (with the designation of statewide subclasses if the

Court deems necessary and appropriate) defined as follows:

> All Consumer residents and/or domiciliaries of the United States who
> purchased and/or paid for pet food included in the March 16, 2007 recall.

> Excluded from the proposed Class are (i) any Defendant, any entity in which
> any Defendant has a controlling interest or which has a controlling interest
> in, and Defendants' legal representatives, predecessors, successors, and
> assigns; (ii) the judicial offices to whom this case is assigned; and (iii) any
> member of the immediate families of excluded persons.

32.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also

seek certification of a national Property Class (with the designation of statewide

subclasses if the Court deems necessary and appropriate) defined as follows:

> All residents and/or domiciliaries of the United States whose pets incurred
> medical expenses and/or died as a result of ingestion of pet food included
> in the March 16, 2007 recall.

> Excluded from the proposed Class are (i) any Defendant, any entity in
> which any Defendant has a controlling interest or which has a controlling
> interest in, and Defendants' legal representatives, predecessors,
> successors, and assigns; (ii) the judicial offices to whom this case is
> assigned; and (iii) any member of the immediate families of excluded
> persons.

33.     Should this court determine that a national Consumer Class would not

satisfy the applicable requisites for class certification, Plaintiff alternatively seeks

certification of a statewide class, defined as:

> All Consumer residents and/or domiciliaries of Indiana, who purchased
> and/or paid for pet food included in the March 16, 2007 recall.

> Excluded from the proposed Class are (i) any Defendant, any entity in which
> any Defendant has a controlling interest or which has a controlling interest
> in, and Defendants' legal representatives, predecessors, successors, and
> assigns; (ii) the judicial offices to whom this case is assigned; and (iii) any
> member of the immediate families of excluded persons.

34.     Should this court determine that a national Property Class would not

satisfy the applicable requisites for class certification, Plaintiff alternatively seeks

certification of a statewide class, defined as:

> All Consumer residents and/or domiciliaries of Indiana, whose pets incurred
> medical expenses and/or died as a result of ingestion of pet food included in
> the March 16, 2007 recall.
>
> Excluded from the proposed Class are (i) any Defendant, any entity in which any
> Defendant has a controlling interest or which has a controlling interest in, and
> Defendants' legal representatives, predecessors, successors, and assigns; (ii) the
> judicial offices to whom this case is assigned; and (iii) any member of the
> immediate families of excluded persons.

35.     The Class consists of many thousands of persons and payers throughout the

United States, making individual joinder of all Class Members impractical.

36.     All Class Members share a united interest in the fair, just and consistent

determination of the questions of law and fact necessary to the adjudication of Defendants'

liability, which predominate over questions affecting only individual members. These key

common liability questions include:

a.     whether Defendants' pet food posed an increased risk over other competing pet

food;

b.     whether and when Defendants knew or should have known of its pet food's

dangerous defects;

c.     whether Defendants knowingly, recklessly, or negligently concealed, suppressed

or failed to disclose the health risks of their pet food from regulators, and the public;

d.     whether Defendants' conduct violated state consumer protection statutes and state

fraud and deceptive practices acts;

e.     whether Defendants breached implied warranties covering its pet food;

f.      whether Defendants acted negligently in the sale and promotion of their pet food;

g.      whether Defendants were unjustly enriched at the expense of Plaintiffs and the Class; and,

h.      whether a national class or statewide classes, and/or other subclasses, are superior, within the requirements of Rule 23(b)(3), on any of the Class Claims.

37.     The Class is also united on fundamental questions regarding its members entitlement to damages and equitable relief, including:

a.      whether members of the Class are entitled to damages and/or equitable relief based on their payments for pet food and medical expenses, replacement costs for dead pets, and, if so, the appropriate scope, extent, measure of damages, and equitable relief that should be awarded;

b.      the appropriate scope, extent and measure of damages and equitable relief that should be awarded;

c.      whether the degree of reprehensibility of Defendants' conduct warrants the imposition of punitive damages under controlling authority; and,

d.      whether Class Members are entitled to attorneys' fees, prejudgment interest and costs of suit.

38.     Plaintiffs' claims and defenses are typical of the claims and defenses of the Class because Defendants uniformly misrepresented the safety of their pet food, and uniformly and actively suppressed, concealed, and failed to disclose the material risks associated with the Defendants' pet food.  Defendants' uniform conduct deprived Plaintiff and all members of the Class of their ability to make an informed decision about whether to use and/or pay for Defendants' pet food.

39.    Plaintiffs and their counsel will fairly and adequately assert and protect the interests of all members of the Class. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation, including third-party payer and consumer litigation. Plaintiffs have no interest adverse to those of any absent Class Members, with respect to the key common issues of Defendants' product, knowledge, conduct, and duty, and resulting liability therefore. All members of the Class share a common interest in the determination of all factual and legal issues pertinent to Defendants' liability and to the fair reallocation of the economic costs associated with Defendants' pet foods as between Defendants' and their consumers, through the disgorgement and restitution of pet food revenue unjustly obtained by Defendants.

40.    Class certification is proper under Federal Rule of Civil Procedure 23(b)(1)(A), because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for Defendants.

41.    Class certification is proper under Federal Rule of Civil Procedure 23(b)(1)(B) because the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive or the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.

42.    Class certification is proper under Federal Rule of Civil Procedure 23(b)(3), because common issue of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class adjudication is superior to individual litigation,

which would foreclose the ability of most Class Members to litigate their claims, impose an undue burden on the courts, and result in inconsistent determinations of common issues. The Court may employ issue certification under Rule 23(c)(4)(B), to address any variation of law, fact, or interest, which procedure is superior, from the standpoint of fairness, efficiency, and economy, to the denial of class treatment and reversion to repetitive and piecemeal individual litigation.

43.     Plaintiff seeks a class certification decision that, regardless of the applicable subsection of Rule 23 under which class treatment is granted, (1) preserves the right of Class Members to exclude themselves from the Class under Rule 23(c)(2)(B), unless the Court makes a finding that Defendants' available assets and insurance constitute a traditional "limited fund" under the meaning of *Ortiz v. Fibreboard*, 527 U.S. 815, 816 (1999) and (2) if appropriate, grants class certification with respect to particular issues under 23(c)(4)(A).

44.     The need for class wide notice presents no barrier to certification because notice can be effectively disseminated to the Class by techniques commonly used in consumer class actions. Notice may be provided to Class Members under the requirements of Fed.R.Civ.P. 23(c)(2) by such combination of print publication, broadcast publication, internet publication, and/or first class mail that this Court determines best comports with modern Fed.R.Civ.P. 23(c)(2) class notice form, content, and dissemination techniques, as used in other medical products liability cases and as recommended by the Manual for Complex Litigation, 4th and the Federal Judicial Center.

## COUNT I

### UNJUST ENRICHMENT

45.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully

set forth herein.

46. Defendants have been, and continues to be, unjustly enriched, to the detriment of and at the expense of the Class Members, as a result of its unlawful and/or wrongful collection of, inter alia, the Plaintiffs and the Class Members' payments for Defendants' pet food, such that Defendants' retention of such payments is inequitable.

47. Defendants have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Defendants' pet food, and continue to so benefit to the detriment and at the expense of the Plaintiffs and the Class Members.

48. Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by the Plaintiffs and the Class Members, who seek disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution and/or rescission for the benefit of the Class Members, in an equitable and efficient fashion to be determined by the Court.

49. The Class Members are entitled to the imposition of a constructive trust upon Defendants such that its enrichment, benefit and ill-gotten gains may be allocated and distributed equitably by the Court to and/or for the benefit of Class Members.

## COUNT II

## BREACH OF IMPLIED WARRANTIES

50. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

51. Defendants sold and promoted their pet food and placed it into the stream of commerce. Defendant knew or had reason to know of the specific use for which the pet food was purchased and impliedly warranted that their pet food was of merchantable quality and fit

for such use.

52.    Class Members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendants and upon its implied warranty that their pet food was of merchantable quality and fit for the intended use.

53.    Defendants knew, should have known, or had reason to know that Class Members were influenced to approve and purchase their pet food because of Defendants' expertise, skill, judgment, and knowledge in furnishing its pet food for that use.

54.    Defendants pet food was not of merchantable quality and were not fit for their intended use, because they contained substances dangerous to pets.

55.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Ala. Code § 7-2-314, *et. seq.*

56.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Alaska St. § 45.02.314, *et. seq.*

57.    Defendants breached the implied warranty their pet food was of merchantable quality and fit for such use in violation of Ariz. Rev. Stat. Ann. § 47-2314, *et. seq.*

58.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Ark. Code Ann. § 4-2-314, *et. seq.*

59.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Cal. Comm. Code § 2314, *et. seq.*

60.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Co. Rev. St. § 4-2-314, *et. seq.*

61.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Conn. Gen. Stat. Ann. § 42a-2-314, *et.*

*seq.*

62.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of 6 Del. C. § 2-314, *et. seq.*

63.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of D.C. Code § 28:2-314, *et. seq.*

64.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Fla. Stat. Ann.  § 672.314, *et. seq.*

65.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Ga. Code. Ann. § 11-2-314, *et. seq.*

66.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Haw. Rev. Stat. § 490:2-314, *et. seq.*

67.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Id. Code § 28-2-314, *et. seq.*

68.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Ill. Comp. Stat. Ann. Ch. 810, 5/2-314, *et. seq.*

69.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Indiana Code Ann.  § 26-1-2-314, *et. seq.*

70.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Iowa Code Ann. § 554.2314, *et. seq.*

71.    Defendants breached the implied warranty that their pet food was were of merchantable quality and fit for such use in violation of Kansas Stat. Ann. § 84-2-314, *et. seq.*

72.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Ken. Rev. Stat. Ann. § 355.2-314, *et. seq.*

73.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of, and is liable in redhibition under La. Civ. Code Ann. Art. 2520, et seq.

74.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of 11 Maine Rev. Stat. Ann. § 2-314, *et. seq.*

75.    Defendants breached the implied warranty that their pet food was were of merchantable quality and fit for such use in violation of Md. Code Ann., Com. Law § 2-314, *et. seq.*

76.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Mass. Gen. Laws Ann. Ch. 106 § 2-314, *et. seq.*

77.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Mich. Comp. Laws Ann. § 440.2.314, *et. seq.*

78.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  Minn. Stat. Ann. § 336.2-314, *et. seq.*

79.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Miss. Code Ann. § 75-2-314, *et. seq.*

80.    Defendants breached the implied warranty that their pet food was of

merchantable quality and fit for such use in violation of Missouri Rev. Stat. § 400.2-314, *et. seq.*

81.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Mont. Code Ann. § 30-2-314, *et. seq.*

82.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Nev. Rev. Stat. U.C.C. § 104.2314, *et. seq.*

83.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of N.H. Rev. Stat. Ann. § 382-A:2-314, *et. seq.*

84.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of N.J. Stat. Ann. § 12A:2-314, *et. seq.*

85.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of N.M. Stat. Ann. § 55-2-314, *et. seq.*

86.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of N.Y. U.C.C. Law 2-314, *et. seq.*

87.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of N.C. Gen. Stat. Ann. § 25-2-314, *et. seq.*

88.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of N.D. Stat. § 41-02-314, *et. seq.*

89.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Ohio Rev. Code Ann. § 1302.27, *et. seq.*

90.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  12A Okla. Stat. § 2-314, *et. seq.*

91.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  Or. Rev. Stat. § 72.3140, *et. seq.*

92.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  13 Pa. Stat. Ann.  § 2314, *et. seq.*

93.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  R.I. Gen. Laws § 6A-2-314, *et. seq.*

94.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of S.C. § 36-2-314, *et. seq.*

95.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of S.D. Stat. 57A-2-314, *et. seq.*

96.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  Tenn. Code Ann. § 47-2-314, *et. seq.*

97.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Tex.Bus. & Com. Code Ann. § 2.314, *et. seq.*

98.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  Ut. Code Ann. § 70A-2-314, *et. seq.*

99.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of  Va. Code Ann. § 8.2-314 , *et. seq.*

100.     Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Vt. Stat. Ann. § 9A-2-314, *et. seq.*

101.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Wa. Rev. Code § 62A.2-314, *et. seq.*

102.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of W.Va. Code § 46-2-314, *et. seq.*

103.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Wis. Stat. Ann. § 402.314, *et. seq.*

104.    Defendants breached the implied warranty that their pet food was of merchantable quality and fit for such use in violation of Wyo. Stat. § 34.1-2-314, *et. seq.*

105.    As a proximate cause of Defendants' breach of warranty, Plaintiffs and the Class suffered ascertainable losses, injuries, and damages as specified herein in an amount to be determined at trial.

## COUNT III

### Products Liability

106.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

107.    At all relevant times hereto, Defendants were engaged in the business of designing, manufacturing, assembling, and selling pet food. Defendants designed, manufactured, assembled, and sold this pet food with the knowledge that it would be fed to pets.

108.    Defendants' pet food was expected to, and did, reach Plaintiffs and Class Members without substantial change in their condition as manufactured and sold by Defendants. Due to the product defects described herein, at the time the pet food reached the Plaintiffs and Class members, the pet food was in a condition not contemplated by any reasonable person among the expected users of the pet food.  The pet food was unreasonably dangerous to the

expected users of the pet food when used in the reasonably expected manner.

109.    The pet food designed, manufactured, marketed, and sold by the Defendants to the Plaintiffs and class members was in a defective condition which was unreasonably dangerous to any user or consumer of the device.

110.    The Plaintiff and Class Members used the pet food in the manner in which Defendants intended it to be used.

111.    Neither the Plaintiffs nor the Class Members were aware of, and could not in the exercise of reasonable care have discovered, the defective nature of Defendants' pet food, nor could they have known that Defendants designed or manufactured the pet food in a manner that would cause an increased risk of injury to their pets.

112.    As a direct and proximate result of the Defendants negligently placing the defective product in the stream of commerce, Plaintiffs and Class Members were injured and have medical and other related expenses.

113.    Defendants' pet food constitute products which are dangerous for their reasonably intended uses, due to their defective design, manufacture and misinformation in Defendants' marketing.

## COUNT IV

### Negligence

114.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

115.    Defendants owed a duty of reasonable care to the Plaintiffs and the Class Members in the design, manufacture, and marketing of their pet food.

116.    Defendants breached this duty by allowing a negligently produced, designed,

and marketed pet food into the stream of commerce.

117.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class Members were injured and have incurred expenses and will continue to incur expenses in the future.  Plaintiffs have also endured pain and suffering and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, for themselves and all others similarly situated, respectfully requests that this Court enter a judgment against Defendants and in favor of Plaintiff, and grant the following relief:

A.    Determine that this action may be maintained as a class action with respect to a national class or with subclasses corresponding to the several states' laws, or, in the alternative, an Indiana statewide class, pursuant to the appropriate subsections of Rule 23 of the Federal Rules of Civil Procedure; that the court certify a class action with respect to particular issues if appropriate, and that the Court designate and appoint Plaintiff and counsel to serve as Class Representatives and Class Counsel;

B.    Declare, adjudge and decree the conduct of the Defendants as alleged herein to be unlawful;

C.    Grant Class Members awards of actual, compensatory, punitive and/or exemplary damages in such amount to be determined at trial and as provided by applicable law;

D.    Grant Class Members their costs of suit, including reasonable attorneys' fees, and expenses as provided by law; and,

E.    Grant Class Members such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

Respectfully submitted,

**PRICE WAICUKAUSKI & RILEY, LLC**

By_____

William N. Riley, Attorney No. 14941-49
Jamie R. Kendall, Attorney No. 25124-49
Christopher A. Moeller, Attorney No. 25710-49

The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN  46204
(317) 633-8787
(317) 633-8797 (fax)

**Cooke Law Firm**
J. Aaron Cooke

P.O. Box 188
Lafayette, IN  47902
p-765-423-5628
f-765-423-1373